**JACKSONWHITE**
ATTORNEYS AT LAW
*A Professional Corporation*

40 North Center, Suite 200
Mesa, Arizona 85201
T: (480) 464-1111  F: (480) 464-5692
Email: centraldocket@jacksonwhitelaw.com
By:  Adam B. Decker, No. 021461

Kenneth R. Davis II, *Admitted Pro Hac Vice*
davisk@lanepowell.com
Shawn M. Lindsay, *Admitted Pro Hac Vice*
lindsays@lanepowell.com
LANE POWELL PC
601 SW Second Avenue, Suite 2100
Portland, Oregon 97204-3158
Telephone: (503) 778-2100
Facsimile: (503) 778-2200

Attorneys for *Non-Party Open Design Alliance*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| AUTODESK, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>DASSAULT SYSTEMES SOLIDWORKS CORPORATION, a Delaware corporation,<br><br>Defendant. | No. 2:09-mc-00096<br><br>(United States District Court Northern District of California Case No. 3:08-cv-04397-WHA)<br><br>**DECLARATION OF ARNOLD VAN DER WEIDE** |

I, Arnold van der Weide, declare as follows:

1. I am president of non-party Open Design Alliance (the "ODA"). I submit this declaration in support of the ODA's response to Autodesk, Inc.'s ("Autodesk")

1

1  motion to compel and the ODA's Motion for Protective Order (the ODA's "Motion"). I
2  am fully familiar with the facts set forth herein and, if called upon as a witness, could
3  competently testify to the truth hereof.

4      2.    The ODA is a small Washington State nonprofit corporation. It has a three
5  person staff consisting of an office manager who runs its office in Phoenix and a
6  president and chief technology officer who both work from their homes in
7  The Netherlands and Florida, respectively.

8      3.    Autodesk is a $2.3 billion revenue per year publicly traded company based
9  in San Rafael, California. Autodesk's leading software products, AutoCAD and
10 AutoCAD LT, used primarily in the computer-aided design industry, have an
11 installed-base of approximately 8,500,000 seats worldwide.

12     4.    Both the ODA and Autodesk participate in the computer aided design
13 ("CAD") engine industry. CAD engines comprise the software platform which allows
14 draftsmen to draw lines, shapes, and objects with their computers. Autodesk holds the
15 dominant position in the market for CAD engines primarily through its product
16 AutoCAD. Autodesk's AutoCAD uses the ".DWG" file format for storing user data files.
17 Just as AutoCAD is dominant in the market, .DWG files are the dominant CAD file
18 format with somewhere between 2 and 4 billion files currently in existence in the world.
19 These files include drawings of vital importance in all of the diverse industries in which
20 CAD software is used. The .DWG format is the *de facto* industry standard for CAD
21 drawing file interoperability, and is often specifically mandated by government contracts.
22 Compatibility with .DWG files is critical to the success of any competitor in the CAD
23 industry. Autodesk has attempted to control the .DWG format for over twenty years, and
24 has worked to exclude others from using .DWG files, despite the fact the format has
25 resided in the public domain. To analogize, Autodesk's actions are similar to the

1  hypothetical situation should Microsoft prevent others from being able to access .DOC
2  files.
3      5.   Seeing the need for read and write access to .DWG files and being
4  determined that the .DWG format should remain open (available to all), a number of
5  companies joined together in February 1998 to form what is now known as the ODA, an
6  independent, mutual benefit nonprofit corporation dedicated to making .DWG an open,
7  accessible format for storage of drawing data. The ODA's members absolutely depend
8  on access to .DWG format files for their existence because their end users need to able to
9  access those files. The ODA has analyzed CAD file formats and CAD engines to
10 develop software "libraries" that allow its members and others to develop competitive
11 CAD products that can read and write to .DWG files such that the files will be
12 compatible with Autodesk's AutoCAD product. The libraries are available under the
13 names "OpenDWG" and "DWGdirect." Since its founding, the ODA has made these
14 libraries available to its members in tool kits and view kits through its website. These
15 libraries are available to anyone for free for non-commercial use. The ODA's libraries
16 are alternatives to the "RealDWG" libraries created in 2005 by Autodesk. Moreover, the
17 ODA's libraries are exclusively used by its members as inputs to products created by its
18 members that could compete with Autodesk products. The ODA's libraries, unlike those
19 of Autodesk, are documented (i.e., open), supported, and available to all ODA members.
20 Most CAD companies and other software firms which regularly use CAD are members of
21 the ODA, including defendant Dassault Systémes SolidWorks Corp. ("SolidWorks").
22      6.   The ODA's office is run by one person: Michele Mason. The ODA's two
23 other full-time staff consist of me, its president, and Neil Peterson, its chief technology
24 officer. Both Mr. Peterson and I live outside Arizona and work from home. Ms. Mason
25 manages the ODA's contracts, files, and other operational matters. I handle member

relations, public relations, and other executive matters. I am the only ODA employee capable of serving as a corporate designee for purposes of a FRCP 30(b)(6) deposition. I reside in The Netherlands and visits the ODA's office in Arizona about two or three times a year. Mr. Peterson develops the ODA's software. This is the full extent of the ODA's office staff who would be required to respond to the subpoena at issue.

7. In order to comply with Autodesk's subpoena, Ms. Mason will have to dedicate approximately one week (40 hours) to review and collect responsive documents. Additionally, Mr. Peterson and I together would need to spend approximately 60 hours reviewing and collecting responsive documents and, in my case, an additional 20 hours preparing for and testifying at deposition. Further, the ODA's attorneys would need to spend approximately 20 hours to prepare the privilege log demanded by Autodesk, and an additional 40 hours to prepare for and defend the deposition, including travel time. Work dedicated to responding to Autodesk's subpoena will not merely distract from the ODA's business, it virtually will shut down the entire administrative operation of the not-for-profit corporation, thus significantly jeopardizing its ability to deliver the services it has promised to its members. The above are hard costs that the ODA will sustain in order to comply with Autodesk's subpoena. Such costs might be small and trivial to Autodesk, a multi-billion dollar corporation, but they are substantial for a three-person-staffed nonprofit corporation like the ODA.

8. Autodesk's subpoena, in part because of its extreme over breadth, would require the ODA to review over 50,000 pages of hard copy documents and an estimated 45,000 pages of electronic documents. The ODA, as a non-profit entity, is staffed very leanly. It has only a single office staff person who would primarily be in charge of assembling potential responsive documents for production. The subpoena would require that person to look in virtually every single hard copy file of documents retained by the

ODA in two different offices. That employee would need at least 40 hours of time – or a full work week—to accomplish that task. Critically to the ODA, a full week of her time spent in this matter is a full week of time that she is unable to engage in the ODA's business – virtually bringing the ODA's business to a halt. Her time should be compensated at the rate of $40 per hour.

9. The search for documents would also require extensive time from its two executives who would be required to search their own personal email for documents responsive to the requests. The CTO and I have vast communications with CAD industry representatives and members and maintain many e-mail files separate from files maintained by the ODA headquarters. This will require significant time. Our time, estimated at 60 hours, should be compensated at the rate of $200 per hour.

10. The ODA should also be compensated with respect to costs incurred in providing testimony pursuant to the deposition subpoena. These costs would include 25 hours of my time, the expected deponent for the ODA, which should be compensated at the rate of $200 per hour.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED this 15th day of September, 2009.

_____
Arnold van der Weide

5