# JACKSONWHITE

### ATTORNEYS AT LAW
*A Professional Corporation*

40 North Center, Suite 200
Mesa, Arizona 85201
T: (480) 464-1111 F: (480) 464-5692
Email: centraldocket@jacksonwhitelaw.com
By:     Adam B. Decker, No. 021461

Kenneth R. Davis II, *Admitted Pro Hac Vice*
davisk@lanepowell.com
Shawn M. Lindsay, *Admitted Pro Hac Vice*
lindsays@lanepowell.com
LANE POWELL PC
601 SW Second Avenue, Suite 2100
Portland, Oregon 97204-3158
Telephone:  (503) 778-2100
Facsimile:  (503) 778-2200

Attorneys for *Non-Party Open Design Alliance*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| AUTODESK, INC., a Delaware corporation,<br><br>          Plaintiff,<br><br>     vs.<br><br>DASSAULT SYSTEMES SOLIDWORKS CORPORATION, a Delaware corporation,<br><br>          Defendant. | No. 2:09-mc-00096<br><br>(United States District Court Northern District of California Case No. 3:08-cv-04397-WHA)<br><br>**NON-PARTY OPEN DESIGN ALLIANCE'S MOTION FOR PROTECTIVE ORDER**<br><br>(**Oral Argument Requested**) |

## I.     INTRODUCTION

The Open Design Alliance (the "ODA"), a non-party to the underlying action at issue, files this Motion for Protective Order.  At issue is a subpoena served by plaintiff

1

Autodesk, Inc. ("Autodesk") on the ODA.   The ODA, a thinly-staffed nonprofit corporation, is not a party nor is it related to any party in this litigation.   The subpoena served by Autodesk would require the ODA, a Washington State nonprofit corporation, to: (a) produce over 45,000 documents, requiring more than one week of labor from its sole staff person and additional significant time from its president and chief technology officer; and (b) produce for deposition its president, who has already been deposed not once, but twice before by Autodesk on these same topics in prior litigation.   Autodesk has steadfastly refused to narrow the scope of the documents and deposition sought in any significant matter, so as to avoid duplicative discovery.   Further, Autodesk has failed to agree to consent to compensate the ODA a single penny for the substantial costs that the ODA would incur in complying with the subpoena.   Autodesk's complete refusal to engage the ODA regarding these issues in any reasonable manner has forced the ODA to incur yet further expense in bringing this motion for protective order and responding to Autodesk's Motion to Compel.

What is most disappointing about this matter is that the parties were very close to resolving this dispute on their own as a result of the ODA's significant compromises.   On Friday, August 28, 2009, counsel for Autodesk and counsel for the ODA conferred by telephone and resolved almost all of the outstanding issues.   The call ended with the ODA's counsel offering a suggested resolution to bridge the remaining issues. Autodesk's counsel stated that she would take the offer back to her client to confer and reply.   Instead of responding as promised, Autodesk, without warning, or conferring with the ODA, filed its Motion to Compel the following business day.

## II.   MOTION

Pursuant to Fed. R. Civ. P. ("FRCP") 26(c)(1), the ODA moves this Court for a protective order quashing the subpoena served by Autodesk or, in the alternative, limiting

the scope of discovery sought by Autodesk to matters that are not duplicative of documents and testimony already obtained by Autodesk in ongoing litigation between Autodesk and the ODA.  Specifically, the ODA requests, if the subpoena is not quashed, that (1) the deposition sought by Autodesk be limited to two hours to take place in the Netherlands and limited to subpoena deposition topics 2, 4, and part of 7; and (2) that the documents sought by Autodesk be limited to documents dated after January 30, 2009.  The ODA also requests that, should the subpoena not be quashed, that the Court order Autodesk to pay its reasonable expenses incurred in responding to the subpoena.  In any event, the ODA requests that the Court order Autodesk to reimburse the ODA for its attorneys' fees associated with the present motion as well as responding to Autodesk's Motion to Compel.

This response and motion are supported by the following Memorandum of Points and Authorities as well as the declarations of Arnold van der Weide ("van der Weide Decl."), and Shawn Lindsay ("Lindsay Decl."), filed concurrently herewith.  The ODA requests oral argument.

The ODA met and conferred with counsel for Autodesk pursuant to FRCP 37 and Local Rule 7.2(j).  Counsel for the parties conferred via telephone on September 14, 2009 and were unable to resolve the matter.  (Lindsay Decl. ¶ 22).

## III.   MEMORANDUM OF POINTS AND AUTHORITIES

## A.   The Parties.

The ODA is a small Washington State nonprofit corporation.  It has a three person staff consisting of an office manager who runs its office in Phoenix and a president and chief technology officer who both work from their homes in The Netherlands and Florida, respectively.  (van der Weide Decl. ¶ 2).

3

Autodesk is a $2.3 billion revenue per year publicly traded company based in San Rafael, California. Autodesk's leading software products, AutoCAD and AutoCAD LT, used primarily in the computer-aided design industry, have an installed-base of approximately 8,500,000 seats worldwide. (*Id.* at ¶ 3).

**B.      The Underlying Technology at Issue.**

Both the ODA and Autodesk participate in the computer aided design ("CAD") engine industry. CAD engines comprise the software platform which allows draftsmen to draw lines, shapes, and objects with their computers. Autodesk holds the dominant position in the market for CAD engines primarily through its product AutoCAD. Autodesk's AutoCAD uses the ".DWG" file format for storing user data files. Just as AutoCAD is dominant in the market, .DWG files are the dominant CAD file format with somewhere between 2 and 4 billion files currently in existence in the world. These files include drawings of vital importance in all of the diverse industries in which CAD software is used. The .DWG format is the *de facto* industry standard for CAD drawing file interoperability, and is often specifically mandated by government contracts. Compatibility with .DWG files is critical to the success of any competitor in the CAD industry. Autodesk has attempted to control the .DWG format for over twenty years, and has worked to exclude others from using .DWG files, despite the fact the format has resided in the public domain. To analogize, Autodesk's actions are similar to the hypothetical situation should Microsoft prevent others from being able to access .DOC files. (*Id.* at ¶ 4).

Seeing the need for read and write access to .DWG files and being determined that the .DWG format should remain open (available to all), a number of companies joined together in February 1998 to form what is now known as the ODA, an independent, mutual benefit nonprofit corporation dedicated to making .DWG an open, accessible

format for storage of drawing data.  The ODA's members absolutely depend on access to .DWG format files for their existence because their end users need to able to access those files.  The ODA has analyzed CAD file formats and CAD engines to develop software "libraries" that allow its members and others to develop competitive CAD products that can read and write to .DWG files such that the files will be compatible with Autodesk's AutoCAD product.  The libraries are available under the names "OpenDWG" and "DWGdirect."  Since its founding, the ODA has made these libraries available to its members in tool kits and view kits through its website.  These libraries are available to anyone for free for non-commercial use.  The ODA's libraries are alternatives to the "RealDWG" libraries created in 2005 by Autodesk.  Moreover, the ODA's libraries are exclusively used by its members as inputs to products created by its members that could compete with Autodesk products.  The ODA's libraries, unlike those of Autodesk, are documented (i.e., open), supported, and available to all ODA members.  Most CAD companies and other software firms which regularly use CAD are members of the ODA, including defendant Dassault Systémes SolidWorks Corp. ("SolidWorks").  (*Id.* at ¶ 5).

**C.    The Litigation Between the ODA and Autodesk and Between Autodesk and SolidWorks.**

Despite its widespread and long-standing treatment of the "DWG" computer file format identification as a matter in the public domain used by all in the industry, including Autodesk, Autodesk apparently intends to monopolize the "DWG" format as a proprietary trademark, and thus would require anyone who wants to access a .DWG file to either use its AutoCAD product or otherwise obtain a license from Autodesk.  As part of its efforts to control the DWG name, Autodesk filed applications with the United States Patent and Trademark Office ("USPTO") and the Office of Harmonization for the Internal Market of the European Union ("OHIM") to register the mark "DWG."  But

these attempts have thus failed.  The OHIM refused registration and the USPTO suspended the domestic application because, among other reasons, (1) Autodesk is not the exclusive source of files with the format name DWG; (2) Autodesk does not control the use of DWG by others; (3) DWG is synonymous with a CAD drawing file; (4) DWG is a generic term; and (5) the DWG acronym is already incorporated into the registered trademarks and trade names of other CAD industry members, including the ODA, SolidWorks, and Softelec GmbH ("Softelec").  (Lindsay Decl. ¶¶ 2, 3-Ex. 1, 4-Ex. 2).

Stymied in its efforts to monopolize the DWG name by the USPTO and OHIM, Autodesk took a different approach:  it petitioned the Trademark Trial and Appeals Board ("TTAB") to cancel or terminate the registered trademarks of the ODA, SolidWorks, and a third competitor.  In 2006, Autodesk petitioned the TTAB to cancel SolidWorks's DWGEDITOR and DWGGATEWAY registered trademarks.  On January 18, 2007, Autodesk petitioned the TTAB to cancel or terminate the ODA's six OPENDWG registered marks (the "TTAB Proceeding").  Further, on September 19, 2008, Autodesk sued SolidWorks in the United States District Court for the Northern District of California asking the court to, among other things, cancel SolidWorks's registered trademarks "DWGEDITOR" and "DWGATEWAY."  In light of the California litigation, the TTAB Proceeding was suspended on February 3, 2009, and remains so pending the outcome of this litigation.  (*Id.* at ¶ 5).

**D.      Autodesk Obtained Extensive Discovery from the ODA in the TTAB Proceeding.**

During the TTAB Proceeding challenging the ODA marks, Autodesk repeatedly sought discovery that was extremely confidential and proprietary technical product development information that was fundamentally irrelevant to the issues in the TTAB Proceeding.   The ODA was forced to bring a motion for protective order to limit

Autodesk's abusive discovery.  That motion was granted in part and the TTAB limited the scope of Autodesk's discovery.  Still, the scope of discovery sought by Autodesk, and produced by the ODA, was very large.  The ODA responded to two sets of requests for production consisting of 61 requests, three sets of interrogatories consisting of 46 interrogatories, and two sets of requests for admission consisting of 137 requests.  The ODA also produced its president, Arnold van der Weide, for two full-day depositions. Mr. van der Weide answered questions not only on his own behalf but also as the corporate designee pursuant to FRCP 30(b)(6).   Mr. van der Weide also testified on numerous topics outside the scope of the FRCP 30(b)(6) notice.   In total, Mr. van der Weide's testimony amounts to 311 pages.  In addition, on September 17, 2008, Autodesk took the deposition of the ODA's former president, Evan Yares.  That deposition lasted nearly eight hours and amounted to 193 pages of testimony.  (*Id.* at ¶ 6).

Similarly, the document requests served by Autodesk were quite broad.  The requests required the ODA to produce over 45,000 documents.  The ODA's most recent response to Autodesk's discovery requests, prior to the suspension of the TTAB Proceeding, was in January 2009, or only five months prior to Autodesk's service of the subpoena at issue.  (*Id.* at ¶ 13).

**E.   The Subpoena at Issue Mostly Seeks Documents and Information Already Produced in the prior TTAB Proceeding.**

Autodesk's subpoena is déjà vu all over again when one compares the prior document requests and deposition testimony sought in the prior TTAB Proceeding. Below is a side by side by side comparison of some of the documents sought in the present subpoena with those previously sought, and produced.  In some cases they are

nearly identical[1] (*see* Humphries Decl. ¶ 3, Ex. 1-A and Lindsay Decl. ¶ 7-Ex. 3, respectively):

| Present Subpoena-Document Requests | Prior TTAB Proceeding-Document Requests from Autodesk's First RFP |
|---|---|
| **1.** All DOCUMENTS concerning the ODA's selection, *adoption*, and use of the name and *mark OPENDWG* or OPENDWG ALLIANCE from 1997 to the present | **19.** All documents relating to *adoption of the mark OPENDWG*, including all documents relating to other marks considered as possible alternatives.[2] |
| **3.** ALL DOCUMENTS, including *press releases*, other *announcements,* and internal communications, *specifying the date of discontinuation of the former name and the reason(s) therefore,* regarding the *change of the ODA's name as of October 29, 2003 from "OpenDWG Alliance" to "Open Design Alliance"* | **1.** All documents, including but not limited to *press releases, announcing the change of your name as of October 29, 2003 from "OpenDWG Alliance" to "Open Design Alliance."* <br><br> **2.** All documents concerning any temporary or permanent transition *of your name from "OpenDWG Alliance" to "Open Design Alliance,"* including but not limited to all documents *specifying the date of discontinuation of the former name and the reason(s) therefore.* |
| **4.** ALL DOCUMENTS relating to *any temporary or permanent cessation of the ODA's use of the mark OPENDWG, including all DOCUMENTS specifying the period(s) of such non-use and the reason(s) therefore* | **4.** All documents concerning *any temporary or permanent cessation of your use of the mark OPENDWG, including but not limited to all documents specifying the period(s) of such non-use and the reason(s) therefore.* |
| **5.** All DOCUMENTS relating to the ODA's *trademark licensing* and quality control efforts over licensees, trademark prosecution and registration | **16.** All documents, including but not limited to contracts and *license agreements*, authorizing any third party to use the mark OPENDWG. |

[1]      The duplicative language has been italicized for ease of recognition.
[2]      Several other requests sought documents related to the "use" of the name and mark OPENDWG or OPENDWG ALLIANCE.  *See, e.g.,* First RFP, Nos. 3, 9, 10, 16-18, 23, 24 and Second RFP, Nos. 31-33, 61.  (Lindsay Decl. ¶¶ 7-Ex. 3, 8-Ex. 4).

| | |
|---|---|
| activities, including the voluntary surrender of registrations for marks containing the term OPENDWG | **17.** All documents concerning any *license or authorization* that you granted to a third party to use *the mark OPENDWG*.<br><br>**18.** All documents concerning your exercise of *quality control* concerning the use of the mark *OPENDWG* by any third party.<br><br>**23.** Every investigation conducted by you or on your behalf in connection with the availability, *registrability*, or use of the mark *OPENDWG*.<br><br>**24.** Every trademark search conducted by you or on your behalf in connection with the availability, *registrability*, or use of the mark *OPENDWG*.<br><br>**25.** Every inquiry, other than an investigation or trademark search, conducted by you or on your behalf in connection with the availability, *registrability*, or use of the mark *OPENDWG*. |

Similarly, the deposition topics sought in the current subpoena duplicate testimony already sought and offered by the prior TTAB Proceeding[3] (*see* Humphreys Decl. ¶ 3, Ex. 1-A and Lindsay Decl. ¶ 9-Ex. 5, respectively):

| **Present Subpoena-Deposition Topics** | **Prior TTAB Proceeding-30(b)(6) Topics** |
|---|---|
| **1.** The *ODA's use of "DWG" and any names*, marks, words, or designations incorporating DWG. | **3.** The *ODA's use of the letter string DWG and names* or terms containing that letter string in its advertising, product names and documentation. |

---
[3]    The duplicative language has been italicized for ease of recognition.

| | |
|---|---|
| **6.** Any studies, analyses, surveys, research, correspondence or communications regarding *consumers' understanding of "DWG"* in connection with CAD software and related products and services. | **6.** The ODA's awareness of *consumers' understanding of the term DWG.* |

Further, even where documents and testimony sought in the present subpoena were not expressly spelled out in Autodesk's prior FRCP 30(b)(6) deposition notice in the prior TTAB Proceeding, that testimony was nonetheless provided. The chart below shows that the subpoena calls for re-production of testimony already sought and obtained in great detail by Autodesk in the prior depositions (see Humphreys Decl. ¶ 3, Ex. 1-A and Lindsay Decl. ¶¶ 10-Ex. 6, 11-Ex. 7, 12-Ex. 8, respectively):

| **Present Subpoena-Deposition Topics** | **Prior TTAB Proceeding-Testimony** |
|---|---|
| **1.** The ODA's use of "DWG" and any names, marks, words, or designations incorporating DWG. | **Dec. 11, 2007 A. van der Weide Deposition:**<br>Pages: p. 60, ln. 11 to p. 62, ln. 19; p. 66, lns. 11-25; p. 75, ln. 16 to p. 82, ln. 14; p. 85, ln. 11 to p. 87, ln. 24; p. 93, ln. 14 to p. 105, ln. 25; p. 123, ln. 3 to p. 130, ln. 18; p. 137, ln. 5 to p. 140, ln. 2.<br><br>**July 22, 2008 A. van der Weide Deposition:**<br>Pages: p. 19, lns. 9-21; p. 22, lns. 3-17; p. 35, ln. 21 to p. 38, ln. 4; p. 56, ln. 19 to p. 57, ln. 20; p. 60, ln. 16 to p. 78, ln. 25.<br><br>**Sept. 17, 2008 E. Yares Deposition:**<br>Pages: p. 70, ln. 13 to p. 74, ln. 20; p. 119, ln. 15 to p. 124, ln. 15; p. 191, lns. 9-20. |
| **3.** The ODA's communications with AUTODESK regarding DWGDIRECT or other DWG-related software libraries, and use of "DWG" and any names, marks or designations incorporating DWG. | **Sept. 17, 2008 E. Yares Deposition:**<br>Pages: p. 93, ln. 12 to p. 97, ln. 9; p. 171, ln. 6 to p. 177, ln. 2. |

| | |
|---|---|
| **5.** Communications between the ODA and any party regarding AUTODESK's applications to register the mark DWG, DWG (and Design), DWG EXTREME, DWG TRUEVIEW, and DWG TRUECONVERT, including communications regarding the ODA's Letter of Protest to the United States Patent and Trademark Office in conjunction with Autodesk's applications to register these marks. | **July 22, 2008 A. van der Weide Deposition:** Pages: p. 135, ln. 23 to p. 137, ln. 20. |

Despite the almost complete overlap between the present subpoena and the prior documents and testimony produced by the ODA, Autodesk has continued to insist that the ODA could not simply rely on the prior document production and testimony to respond to the present subpoena.  First, Autodesk insisted that all the ODA files be re-reviewed for documents that either may or may not have been produced previously, thus requiring a complete re-review of *all* the ODA documents, whether previously produced or not.  Second, Autodesk insisted that the ODA compile a privilege log of all documents withheld pursuant to any privilege—a huge undertaking given the amount of attorney-client privileged materials involved.  Third, as further detailed in Section G on page 13 below, Autodesk refused to agree to any significant limits on the deposition now being sought, despite the 30-plus hours of testimony given on these very topics.  Further, despite requests that it do so, Autodesk has refused to consent to reimburse the ODA anything for the substantial costs it will incur to respond to the subpoena.  (Lindsay Decl. ¶ 14).

**F.       Complying with the Subpoena is Burdensome and Expensive for the ODA.**

The ODA's office is run by one person: Michele Mason.  The ODA's two other full-time staff are Arnold van der Weide, its president, and Neil Peterson, its chief

technology officer.  Both Mr. van der Weide and Mr. Peterson live outside Arizona and work from home.  Ms. Mason manages the ODA's contracts, files, and other operational matters.   Mr. van der Weide handles member relations, public relations, and other executive matters.  Mr. van der Weide is the only ODA employee capable of serving as a corporate designee for purposes of a FRCP 30(b)(6) deposition.  He resides in The Netherlands and visits the ODA's office in Arizona about two or three times a year. Mr. Peterson develops the ODA's software.  This is the full extent of the ODA's office staff who would be required to respond to the subpoena at issue.  (van der Weide Decl. ¶ 6).

In order to comply with Autodesk's subpoena, Ms. Mason will have to dedicate approximately one week (40 hours) to review and collect responsive documents. Additionally, Mr. van der Weide and Mr. Peterson together would need to spend approximately 60 hours reviewing and collecting responsive documents and, in the case of Mr. van der Weide, an additional 20 hours preparing for and testifying at deposition. Further, the ODA's attorneys would need to spend approximately 20 hours to prepare the privilege log demanded by Autodesk, and an additional 40 hours to prepare for and defend the deposition, including travel time.   Work dedicated to responding to Autodesk's subpoena will not merely distract from the ODA's business, it virtually will shut down the entire administrative operation of the not-for-profit corporation, thus significantly jeopardizing its ability to deliver the services it has promised to its members. The above are hard costs that the ODA will sustain in order to comply with Autodesk's subpoena.   Such costs might be small and trivial to Autodesk, a multi-billion dollar corporation, but they are substantial for a three-person-staffed nonprofit corporation like the ODA.  (*Id.* at ¶ 7).

**G.     Autodesk has not Seriously Attempted to Either Narrow the Scope of the Subpoena or Commit to Any Reimbursement of the ODA's Expenses Incurred to Respond to the Subpoena.**

Autodesk's last written correspondence to the ODA prior to filing its motion to compel was on August 21, 2009.  In that correspondence, Autodesk demanded that the ODA agree that (1) its prior TTAB production constituted a partial response to the subpoena and was subject to the Protective Order in the present case; (2) it would produce such documents in a Concordance Load file; (3) it would produce post January 2009 update documents, along with a privilege log, by August 31, 2009; (4) it would provide further explanation for written objections by August 26, 2009; (5) the ODA would secure SolidWorks's written agreement to use Mr. van der Weide's prior testimony in the present case; and (6) the ODA would produce Mr. van der Weide for deposition in the Netherlands the week of September 4, 2009.  (Lindsay Decl. ¶ 15, Humphries Decl. ¶ 10, Ex. 8).  Autodesk made no offer to either narrow the scope of the documents or deposition sought or to take steps to limit, much less reimburse, the cost on the ODA.  (Lindsay Decl. ¶ 15).

On August 27 and 28, 2009, counsel for Autodesk and counsel for the ODA conferred regarding Autodesk's August 21, 2009 letter.  The ODA essentially agreed to nearly all of Autodesk's requests subject to (a) an agreement between the entities regarding the scope of the deposition to avoid subjects previously covered in the three prior depositions; and (b) reimbursement of ODA's costs incurred in responding to the subpoena.  The ODA also proposed that, instead of a limitation on the types of questions that could be asked, perhaps Autodesk would agree to some limit of the amount of time the deposition could last.  At the request of counsel for Autodesk, on August 28, 2009 counsel for the ODA outlined the costs that the ODA expected to incur in responding to the subpoena.  Counsel for Autodesk responded that she would confer with her client and

13

respond with Autodesk's counter-proposal. Despite Autodesk's promise to submit a counter-proposal and her representation that the discussion had been "productive," no counter-proposal was ever made. Instead, the next business day, Autodesk filed its motion to compel. Notably, at no time prior to filing its motion did Autodesk commit to reimburse the ODA so much as a penny of the costs it would incur in responding the subpoena. (Lindsay Decl. ¶ 16).

## IV.   ARGUMENT

**A.   The ODA is Entitled to an Order Pursuant to FRCP 26(c) Quashing the Subpoena at Issue or, Alternatively, Significantly Limiting its Scope and Requiring Autodesk to Reimburse the ODA for the Costs It Will Incur to Respond to the Subpoena.**

FRCP 26(c)(1) provides as follows:

A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending — or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken. The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:

(A) forbidding the disclosure or discovery;

(B) specifying terms, including time and place, for the disclosure or discovery;

(C) prescribing a discovery method other than the one selected by the party seeking discovery;

(D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters;

(E) designating the persons who may be present while the discovery is conducted;

(F) requiring that a deposition be sealed and opened only on court order;

(G) requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way; and

(H) requiring that the parties simultaneously file specified documents or information in sealed envelopes, to be opened as the court directs.

In addition, FRCP 26(c)(3) provides that FRCP 37(a)(5), which provides for the award of attorneys' fees to the prevailing party, applies to the present motion.

For the reasons stated below, good cause exists both to deny Autodesk's Motion to Compel and to grant the ODA's Motion for Protective Order quashing the subpoena at issue or, alternatively, significantly narrowing its scope and requiring Autodesk to compensate the ODA for the costs it will incur to respond to the subpoena. Further, as detailed in Section F on page 26 below, the ODA should be awarded its fees with respect to the present motion as well as its opposition to Autodesk's Motion to Compel.

**B.    Because Autodesk Did Not Give Notice as Required by FRCP 45(c)(2)(B)(i), Its Motion to Compel Should Be Denied.**

FRCP 45(c)(2)(B)(i) states that a party serving a subpoena on a third party may move for an order compelling production but only "on notice to the commanded person[.]" Autodesk did not give any notice that it would file its motion to compel. In fact, counsel for the parties last spoke about a potential compromise regarding the scope of the subpoena and reimbursement of costs on Friday, August 28, 2009. That conversation and a call on the day before were, in an e-mail from Autodesk's attorney, "productive." The telephone call on August 28 ended at about 4:30 p.m. with most issues resolved except for the costs the ODA would sustain. Counsel for the ODA outlined the costs the ODA would incur to comply with Autodesk's subpoena and requested reimbursement for some of the costs. Counsel for Autodesk promised to confer with her client and reply. Instead of coming back to the ODA with a reply as promised, Autodesk proceeded with filing its motion to compel without having spoken to the ODA prior to doing so. (Lindsay Decl. ¶ 17). As a result, Autodesk has violated FRCP 45(c)(2)(B)(i)

and, consequently, its  motion to compel should be denied and the ODA's motion for protective order should be granted.

**C.  Autodesk Failed to Comply With FRCP 45(c)(1) Because It Did Not Take Reasonable Steps to Avoid Imposing An Undue Burden on the ODA.**

FRCP 45(c)(1) provides, in relevant part, as follows:

> A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

Not only has Autodesk failed to take "reasonable" steps as required by FRCP 45(c)(1) to avoid imposing an undue burden on the ODA, it has practically taken no steps whatsoever.  As a result, this court is required under that rule (i.e. "must") to impose an "appropriate sanction."

In this case, the issue of what are "reasonable" steps to avoid imposing an undue burden must be considered in light of the fact that the ODA is not a party to the present litigation.  *See*, *e.g.*, FRCP 45(c)(2)(B)(ii) (any order to compel production "must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.");  *Dart Indus. Co., Inc. v. Westwood Chem., Inc.* 649 F2d 646, 649 (9th Cir. 1980) (when discovery is sought from third parties, a protective order may be more easily obtained).  Further, the ODA's status as a nonprofit entity with very limited staffing must be taken into consideration in determining what reasonable steps are required to avoid undue burden.

Whatever the definition of "reasonable" is in the context of FRCP 45(c)(1), Autodesk does not meet it.  Over the course of 13 weeks of negotiations regarding the scope of the subpoena, not once did Autodesk commit to paying any of the ODA's expenses that will be incurred in responding to the subpoena.  On August 28, 2009, the ODA made a detailed list of expenses, at a bare minimum, it would incur in responding to

the subpoena.   Autodesk did not respond.   Never did Autodesk acknowledge any obligation on its part to pay any of the significant expenses that the ODA would incur in responding to the subpoena.   For this reason alone, this Court should deny Autodesk's motion to compel and grant the ODA's motion for protective order.   Further, because Autodesk has violated the mandatory requirements of FRCP 45(c)(1), this Court  "must enforce this duty and impose an appropriate sanction" on Autodesk or its attorneys.   The rule expressly allows for those sanctions to include the ODA's lost earnings (which in this case should be measured by the value of the time expended by the ODA to respond to the subpoenas) as well as for the ODA's attorneys' fees, both in connection with responding to any discovery as well as bringing the present motion.

**D.   The ODA is Entitled To a Protective Order From Overly Burdensome Discovery, Particularly Discovery that is Merely Duplicative of Discovery That Autodesk Already Has Obtained.**

FRCP 45(c)(3) protects a non-party, such as the ODA, against the burden of responding to the present subpoena.   In relevant part, subsection (A) of that rule provides certain conditions under Which this Court must quash or modify a subpoena as follows:

(A) *When Required*. On timely motion, the issuing court must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person * * * *;

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

**1.   Under FRCP 45(c)(3)(A)(i), this Court must quash or modify the subpoena because it does not allow the ODA an adequate time to comply.**   The

subpoena called for the ODA to respond by June 19, 2009.  That date has passed as agreed to between the parties.  Autodesk now requests the Court to compel production by September 10 (which has now passed) giving the ODA ten days from the date of filing its motion to search through hundreds of thousands of pages of hard copy and electronic documents in its offices and on several computers, review those documents for privilege or confidentiality concerns, create a privilege log, and produce them.  The amount of time given to the ODA to respond is patently unreasonable.  As the ODA has already explained to Autodesk, it will take the ODA's sole office staff member at least one week to gather all documents called for in the subpoena.  It will take its president and chief technology officer at least 60 hours to review their emails and electronic documents for responsive documents.  There is no way that production can be made in a few days called for in Autodesk's motion.  Thus, the subpoena should be quashed, or, at the least, modified to allow the ODA three weeks from the date of any order of this court to produce responsive documents.

Autodesk complains that it will be prejudiced because of the September 25, 2009 discovery deadline in the underlying litigation.  These are nothing but crocodile tears, however, as any problems that Autodesk has with the discovery deadline are of its own making.  The parties have been negotiating the scope of the subpoena since June 10, 2009.  During that time, on several occasions, it took 10 or more days for Autodesk to respond to proposals made by the ODA.  (Lindsay Decl. ¶ 18).  At any time during that process, Autodesk could have brought this issue to this Court for resolution.  But it chose not to do so.  Any delay is purely of Autodesk's own making and should not be held against the ODA or to require the ODA to perform Herculean tasks to complete production.

**2.      Under FRCP 45(c)(3)(A)(ii), this Court must quash or modify the subpoena because it requires the ODA representative to travel more than 100 miles.** Autodesk well knows that the ODA's only employee who can testify as a corporate designee for purposes of a deposition is Mr. van der Weide, who resides in the Netherlands.   All negotiations between the parties prior to the filing of Autodesk's motion assumed that his deposition would take place in the Netherlands.  Nonetheless, in its motion, Autodesk does not provide for any place of the deposition and thus violates FRCP 45(c)(3)(A)(ii).   As a result, the subpoena should be quashed in its entirety or, alternately, the court should require the deposition to take place in the Netherlands together with adequate compensation to pay for the ODA's counsel to travel to the Netherlands to defend the deposition.

**3.      Under FRCP 45(c)(3)(A)(iv), this Court must quash or modify the subpoena because it imposes an undue burden.** Autodesk's subpoena is overly broad and unduly burdensome both with respect to the deposition topics identified and the documents sought.   "Undue burden can be found when the subpoena is facially overbroad." *Williams v. City of Dallas¸* 178 F.R.D. 103, 109 (N.D. Tex. 1998).  With respect to the deposition topics, one would think that, having invested approximately 20 hours in taking the ODA's deposition (including two depositions of its current president, Arnold van der Weide, and one deposition of its former president, Evan Yares) in the TTAB Proceeding on these very topics, there would be very little new ground to cover in the deposition currently sought by Autodesk.  The ODA, through counsel, repeatedly has tried to reach out to Autodesk and explore possible compromises to the scope of the deposition topics.   Counsel for the ODA pointed out the vast overlap between the deposition topics currently sought by Autodesk and the testimony already obtained in the TTAB Proceeding.    The ODA's counsel sent to Autodesk's counsel a chart very similar

19

to that on pages 10-11 above, precisely indicating numerous examples how the testimony sought in this current deposition subpoena were already covered in prior depositions, including page and line citations to the prior deposition transcripts. Similarly, counsel for the ODA invested significant time detailing how the documents sought in the present subpoena were duplicative of the requests previously propounded, again providing Autodesk's counsel with a detailed table similar to that on pages 8-9 above. (Lindsay Decl. ¶ 19).

Autodesk completely refused to acknowledge the redundancy in the current subpoena and instead filed its motion to compel. The ODA also suggested that Autodesk agree to limit the deposition sought to a time-period shorter than the maximum seven hours as permitted under the Federal Rules of Civil Procedure. Autodesk refused to offer any compromise on that front as well. (*Id.*)

Because the deposition topics and documents sought in the subpoena are overbroad and redundant of prior discovery already obtained, and because Autodesk has taken no steps to reasonably reduce the scope of the subpoena or reduce the burdensomeness on the ODA, the subpoena violates FRCP 45(c)(3)(A)(iv). As a result, the subpoena should be quashed in its entirety or, alternately, modified to reduce the burden on the ODA. If the subpoena is not quashed in its entirety, the ODA requests that it be narrowed as follows: (1) the deposition sought by Autodesk should be limited to two hours to take place in The Netherlands and should be limited to topic numbers 2, 4, and part of 7[4] as the other topics are clearly duplicative of prior testimony; and, (2) the

---

[4] Topic 7 requests testimony regarding "The ODA's knowledge of Autodesk's use of 'DWG' and its native, proprietary DWG technology." While Autodesk's use of "DWG" undoubtedly is relevant to the issue in the *Autodesk v. SolidWorks* litigation (even of duplicative testimony already obtained), the ODA's knowledge of Autodesk's proprietary technology is not even remotely relevant to the issues. Thus, any order from this Court should protect the ODA from having to provide testimony regarding this part of topic number 7.

documents sought by Autodesk should be limited to documents dated after January 30, 2009. The ODA submits that very few documents prior to that date and responsive to the present subpoena were not already produced. The substantial burden on the ODA in re-reviewing all pre-January 2009 documents greatly outweighs any marginal relevance such few potential documents (if they even exist) may have to the litigation between Autodesk and SolidWorks.

**E.      Should the Subpoena Not Be Quashed in its Entirety, the ODA is Entitled To a Protective Order to be Adequately Protected Against the Substantial Costs Associated with Responding to the Subpoena.**

FRCP 45(c)(2)(B) states that a subpoena to produce documents or testimony "*must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance*" (emphasis added). The language, clarified by amendment in 1991, makes clear that it is an absolute requirement that a non-party be protected from significant expense. *See In re Law Firms of McCourts and McGrigor Donald*, 2001 WL 345233 at *1 (S.D. N.Y. 2001) ("The discretion which the district court had to alleviate non-party costs under the old Rule 45(c)(2)(b) becomes mandatory under the 1991 amendments"). The advisory committee notes regarding the 1991 Amendment to FRCP 45 makes clear that "[a] nonparty required to produce documents or materials is protected against significant expense resulting from involuntary assistance of the court."

Even before the 1991 amendments to the federal rules to provide express protection to non-party witnesses with respect to compliance with subpoenas, the Ninth Circuit had long made clear that non-party witnesses merit such protection. *See*, *United States of America v. Columbia Broadcasting System, Inc.*, 666 F.2d 364 (9th Cir. 1982). In *Columbia Broadcasting*, the Ninth Circuit stated as follows:

> Although party witnesses must generally bear the burden of discovery costs, the rationale for the general rule is inapplicable where the discovery demands are made on nonparties. Nonparty witnesses are powerless to

control the scope of litigation and discovery, and should not be forced to subsidize an unreasonable share of the costs of a litigation to which they are not a party. *Id.* at 371. The Ninth Circuit also noted four non-exclusive factors in determining the award of costs including 1) the scope of the discovery; 2) the invasiveness of the request; 3) the extent to which the producing party must separate responsive information form privileged or irrelevant material; and 4) the reasonableness of the costs of production.

*Id.* at 372 fn 9.

Of course the *Columbia Broadcasting* case predates the 1991 amendments to FRCP 45 which makes reimbursement of costs mandatory. Nonetheless, it is relevant to note that each of these four factors identified in the *Columbia Broadcasting* case are satisfied in this case. First, the scope of the production sought by Autodesk is enormous. The ODA estimates that the production would require production of over 45,000 pages of materials in addition to making available for deposition its chief executive for the third time. Second, the invasiveness of the request is extreme. Given the nature of the ODA's business, as a thinly staffed non-profit, the burden posed by the subpoena could hardly be more invasive. Third, the subpoena would require an extremely diligent review of documents to ensure that no privileged or confidential materials are produced. For example, document request number 10 would require the ODA to produce all "documents relating to communications between the ODA and its members…or third parties regarding AUTODESK's applications to register [trademarks], including communications regarding the ODA's Letter of Protest submitted [to the USPTO]." This request alone would result in the review of correspondence with thousands of members and colleagues of the ODA. As stated previously, the ODA has only a single office staff person who would primarily be in charge of assembling potential responsive documents for production. The subpoena would require that person to look in virtually every single hard copy file of documents retained by the ODA. That employee would need at least 40 hours of time–or a full work week—to accomplish that task. Critically to the ODA, a full week of her time spent in this matter is a full week of time that she is unable to engage in

the ODA's business–virtually bringing the ODA's business to a halt.  Fourth, the costs of production are very large for a small non-profit like the ODA.  Autodesk, a $2-3 billion annual revenue company, can't reasonably shift the cost of its own discovery to the ODA, a non-party to the action.

Thus, the ODA must be reimbursed costs it will incur to respond to the subpoena. These reimbursable costs include all costs "resulting from compliance" pursuant to FRCP 45(c)(2)(B).  Thus, the costs include not just those associated with retrieving, identifying, reviewing, and inspecting documents, but also the legal fees incurred and employee time associated with production.  *See, e.g., In re Automotive Refinishing Paint Antitrust Litigation*, 229 F.R.D. 482, 496 (E.D. Penn. 2005) (reimbursement of non-party's legal fees held proper); *In re Law Firms of McCourts and McGrigor Donald*, 2001 WL 345233 at *3 (S.D. N.Y. 2001) (allowing attorneys' fees incurred in reviewing and selecting documents); *In re First American Corp.*, 184 F.R.D. 234, 240-42 (S.D.N.Y. 1998) (legal fees of $75,000 held recoverable in addition to costs related to inspection and copying); *Williams v. City of Dallas*, 178 F.R.D. 103, 113 (N.D. Tex. 1998) (cost of search and production, including attorneys' fees, held recoverable);  *Mycogen Plant Science Inc. v. Monsanto Co.*, 164 F.R.D. 623, 628 (E.D. Penn. 1996) (time and labor in producing the documents and sitting for the depositions); *High Tech Medical Instrumentation, Inc. v. New Image Industries, Inc.,* 161 F.R.D. 86, 89 (N.D. Cal. 1995) (requiring defendant that issued a subpoena to a non-party law firm to pay the full hourly rate of its attorneys and employees spent in responding to the subpoena); *Kisser v. Coalition for Religious Freedom*, 1995 WL 590169 at *1 (E.D. Pa. 1995) (attorneys' fees incurred in searching for documents allowed because "to disallow reimbursement would frustrate the policy of Rule 45 protecting non-parties, who have no control over the scope of discovery, from having to subsidize litigation in which they are not a party"); *Angell v.*

23

*Shawmut Bank Connecticut Nat. Ass'n,* 153 F.R.D. 585, 591 (M.D.N.C. 1994) (cost of searching for, copying, and reviewing documents); *In re Midlantic Corp. Shareholder Litigation*, 1994 WL 750664 at *6 (D.D.C. 1994) (cost of copying and labor); *Standard Chlorine of Delaware, Inc. v. Sinibaldi*, 821 F. Supp. 232, 265 (D. De. 1992) ("the non-party bank is entitled to reimbursement of all reasonable charges incurred in both producing and copying these documents."); *Kahn v. General Motors Corp.*, 1992 WL 208286 at *2 (S.D.N.Y. 1992) (costs of retrieval, review, and production including legal fees); *In re Exxon Valdez*, 142 F.R.D. 380, 389 (D.D.C. 1992) (costs of production and inspection).

Accordingly, the reasonable expenses that this Court should require Autodesk to pay include the following:

**1.      Costs associated with bates numbers, copying, scanning and any processing of the documents produced.**  These costs should be ordered to be payable upon one week of submission of receipts reflecting the same.

**2.      Compensation for the time spent by the ODA's sole staff person to search for, review, and make ready for production any documents to be produced.** Autodesk's subpoena, in part because of its extreme over breadth, would require the ODA to review over 50,000 pages of hard copy documents and an estimated 45,000 pages of electronic documents.  The subpoena would require the ODA's sole staff person to look in virtually every single hard copy file of documents retained by the ODA in its offices.  That employee would need at least 40 hours of time – or a full work week—to accomplish that task.  Her time should be compensated at the rate of $40 per hour.  (van der Weide Decl. ¶ 8).

**3.      Compensation for the time spent by the ODA's executives to search for, review, and make ready for production any electronic documents to be**

**produced.**   The search for documents would also require extensive time from its two executives who would be required to search their own hard files and e-mail files for documents responsive to the requests.   The ODA's president and CTO have vast communications with CAD industry representatives and members and maintain many e-mail files separate from files maintained by the ODA headquarters.   Their time, estimated at 60 hours, should be compensated at the rate of $200 per hour.   (*Id.* ¶ 9).

**4.     Compensation for monies that the ODA will need to pay its attorneys to prepare documents for production.**   The search for documents is further complicated by the fact that attorney-client privileged documents permeate many, if not most, of the files that would be searched.   Also complicating the search is the potential applicability of any joint defense privilege between the ODA and SolidWorks, who are separately in litigation with Autodesk.   The result of all this is that a response to the subpoena would require extensive attorney and paralegal involvement to ensure that all confidences and privileges are maintained.   The ODA has no lawyers or paralegals on staff thus it would be required to retain outside counsel to do this work.   It is estimated that such work would take at least 40 attorney hours (at $290 per hour) and 27 paralegal hours at $180 per hour.   (Lindsay Decl. ¶ 20).

**5.     Compensation for time spent by the ODA's chief executive in preparing for and giving deposition testimony.**   The ODA should also be compensated with respect to costs incurred in providing testimony pursuant to the deposition subpoena.   These costs would include 25 hours of the time of Arnold van der Weide, the expected deponent for the ODA, which should be compensated at the rate of $200 per hour.   (van der Weide Decl. ¶ 10).

**6.     Compensation for monies that the ODA will need to pay its attorneys to defend the deposition of its chief executive.**   The ODA will need to retain counsel to

prepare for, travel to, and defend the deposition of its chief executive.  Such attorney preparation will require significant time reviewing documents in advance of the deposition.  The ODA estimates that its attorney will require, at a minimum 75 hours to prepare for, and travel to (assumedly to the Netherlands), and defend the deposition.  At a rate of $400 per hour, this amount to $15,000.  (Lindsay Decl. ¶ 21).

**F.    The ODA Should Be Awarded its Attorneys' Fees Associated with the Pending Motions.**

Even if the motion for protective order is denied in whole or in part, the court may order that discovery take place "on just terms."   FRCP 26(c)(2).   FRCP 26(c)(3) incorporates Rule 37(a)(5) so that a party seeking a protective order may be awarded its expenses incurred in seeking the same as part of the motion for protective order.  FRCP 37(a)(5)(A) states that, apart from limited circumstances not applicable here, if the motion is granted, the court "must" "require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Further, FRCP 45(c)(1) provides as follows:

> * * * the Court "must enforce [its] duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney [who issues a subpoena] who fails to comply "with its obligation" to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena."

The Northern District of California, the Court from which this underlying litigation arises, confirms that "(b)oth the language of Rule 45(c)(1) and that of the Ninth Circuit in *C.B.S.* [citing *United States v. C.B.S.*, 666 F.2d 364, 371-71 (9th Cir. 1982)] make it clear that sanctions are appropriate if the subpoenaing party fails to take reasonable steps to avoid imposing an undue burden on a third party."  *See High Tech*

*Medical Instrumentation, Inc. v. New Image Industries, Inc.*, 161 F.R.D. 86, 88 (N.D. Cal. 1995).

Autodesk's actions necessitated this motion.  It refused to meaningfully compromise the scope of the subpoena despite the fact that it is largely duplicative of prior document requests and the three  prior depositions already taken.  It filed its motion to compel without properly conferring.  It has refused to offer so much as a penny to pay for the ODA's reasonable expenses in responding to the subpoena in gross violation of the federal rules.  In short, the case for an award of attorneys' fees for the ODA could not be more clear.[5]

## V.   CONCLUSION

The ODA respectfully requests that this court issue a protective order quashing the subpoena served by Autodesk or, in the alternative, (1) limiting the deposition sought by Autodesk to two hours to take place in the Netherlands and limiting the subpoena to deposition topics 2, 4, and part of 7; and (2) limiting the documents sought by Autodesk to documents dated after January 30, 2009.  The ODA also requests that, should the subpoena not be quashed, that the Court order Autodesk to pay its reasonable expenses incurred in responding to the subpoena.  In any event, the ODA requests that the Court

---

[5] For similar reasons, Autodesk's half-hearted request for fees should be denied.  Further, the exceptions to the fees rule under FRCP(a)(5)(A) are applicable here.  Under that rule, the "court must not order this payment if:  i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; ii) the opposing party's nondisclosure, response, or objection was substantially justified; or iii) other circumstances make an award of expenses unjust."  Each of the three provisions apply.  First, Autodesk fired off its motion without even further conferring with the ODA as it reasonably promised to do, much less with any good faith attempt to resolve this issue.  Second, the ODA has reasonably tried to work with Autodesk and essentially had agreed to provide the documents requested but subject to adequate compensation.  Not only did Autodesk refuse, it refused to offer a penny to compensate the ODA for costs incurred in responding to the subpoena.  For these reason, under FRCP(a)(5)(A), Autodesk is expressly precluded from any recovery of its fees or costs associated with this motion.

order Autodesk to reimburse the ODA for its attorneys' fees associated with the present

motion as well as responding to Autodesk's Motion to Compel.

DATED this 15th day of September, 2009

**JACKSON WHITE PC**

By: /s/ Adam B. Decker
   Telephone:  (480) 464-1111

**LANE POWELL PC**

By: /s/ Shawn M. Lindsay
   Telephone:  (503)778-2100
Attorneys for Non-Party *Open Design Alliance*

COPY of the foregoing sent via email
and mail this 15th day of September, 2009, to:

Claude Stern                                    [Mail Only]
Brian Cannon
Evette Pennypacker
Quinn Emanuel
555 Twin Dolphin Dr., Suite 560
Redwood Shores, California 94065
Attorneys for *Dassault Systemes
Solidworks Corporation*

David W. Cowles                                 [Mail and Email]
LEWIS AND ROCA, LLP
40 North Central Ave.
19th Floor
Phoenix, Arizona 85004-4429
Attorneys for Plaintiff *Autodesk, Inc.*

By: /s/ Pam Brimhall

28